No. 75.—WILLIAM W. BERRY *et al.*, plaintiffs in error, *vs.* JOHN R. MATTHEWS *et al.*, defendants in error.

A sale of stock by a portion of the stockholders to the rest, is not such a sale by the *corporation* as will make the purchasers liable to the creditors of the company.

For the facts of the case, and the matters of error assigned, the reader is referred to the decision of the Supreme Court.

JOHN R. STANFORD, H. and T. R. R. COBB, W. L. MITCHELL, and B. H. OVERBY, for the plaintiffs in error.

JUNIUS HILLYER, J. W. H. UNDERWOOD, and B. E. HABERSHAM, for the defendants in error.

*By the Court*—LUMPKIN, Judge.

This was a bill filed by the creditors of the Habersham Iron Works, and Manufacturing Company, and seeking to make the stockholders of that corporation, *individually*, liable for the debts of the complainants, upon four grounds, because—

1st. The act of incorporation was never legally accepted by the company.

2d. That if accepted, the company had forfeited all their rights under it.

3d. That the stockholders had not paid in the amount of stock held by them.

4th. That large dividends had been distributed by the corporation, to the stockholders which ought to have been applied to the payment of the company's debts.

The bill was made returnable to the April term, 1843, of the Superior Court of Habersham county, and at the same term a demurrer was put in by the defendants, containing thirteen grounds, all of which are reducible to *one*, namely, a want of equity. At April term 1844, a decision was made by Judge Hillyer on the demurrer. He held that a formal acceptance of the charter, by a vote of the majority of the stockholders, was not necessary. That any acts which would go to show that the company were acting under their charter, would be sufficient, and that when the charter was granted upon the application of the company, (as in this case,) its acceptance would be presumed from very slight circumstances. He was of the opinion, that from the facts stated in the bill, the charter was accepted by the company.

The complainants assigned *eighteen reasons* in support of the position taken in the bill, that if the charter was accepted, the company had forfeited all its rights under it ; upon this point, the same judge ruled, that a charter may be forfeited, and all the franchises granted therein resumed by the State, on account of the illegal conduct of the company. But, that until a judgment of *ouster* was pronounced by a competent tribunal, the charter remains in full force, and any improper conduct on the part of the corporation cannot be visited on the stockholders, further than

those who are concerned in such misconduct—consequently he adjudged that the stockholders were not individually liable to the creditors, upon the ground that their rights, under the charter, had been forfeited by the improper conduct of the company.

Upon the third ground, that the stockholders had not paid in the stock held by them, the court held, that they were clearly liable, and were compelled to respond to the creditors, and that the remedy was by a proceeding in Chancery. But the difficulty in the present case was, that this charter was granted to the very persons by name, who are defendants in the bill, and who, it appears, had formed the company previous to their application to the Legislature for a charter; and that while it was true that they were authorized to extend their capital to even $60,000, they were under no obligation to do so; and it did not appear that the defendants had ever subscribed for stock which was not paid in, indeed, the very reverse is charged, *that no books of subscription ever were opened.* It was suggested that if the bill had charged, that in pursuance of the charter, the *company* had disposed of such an amount of stock, and that A had purchased so many shares at such a price, and B had bought so many, &c., and that the purchasers had not paid in the respective sums due by them; that they would be decreed, to pay into court for the use of the creditors, *pro rata,* sufficient to pay their respective debts, or the amount of their subscriptions.

As to the fourth ground, that large dividends had been made by the company to the stockholders, which ought to have been applied to the payment of the debts, the court considered it the strongest point in the case, and that if it had been properly stated and insisted on in the bill, the bill would have been sustained; for, that after the insolvency of an incorporated company, the stockholders could no more receive dividends than they could abstract the capital itself; that, in principle, there was no difference.

Upon a careful examination, then, of the whole case made by the complainants, it was *ordered* that the demurrer be sustained, and the bill dismissed, so much of it as seeks to make the defendants liable, upon the ground that their charter had never been accepted, or that they had forfeited their rights and privileges under it; and that the complainants have leave to amend their bill relative to the sale or subscription of stock, and the fraudulent declaration of dividends.

In obedience to this interlocutory order, the following amendment was made:

"And your orators further charge, that, not having access to the books of the company, they cannot say, with absolute certainty, what amount of stock was held and owned by each stockholder; but they believe, and so charge, that the stock of said company divided out, was two hundred shares at one hundred dollars each, making a capital of twenty thousand dollars; and that the same was divided originally, before the act of incorporation was obtained, between the said John R. Matthews, Paul Rossignol and Lewis F. E. Dugas, in the following proportions, or in other number of shares of nearly the same import, viz: to the said John R. Matthews one hundred shares, making the sum of ten thousand dollars, and to each of the others, the said Paul Rossignol and Lewis F. E. Dugas, fifty shares, making the sum of five thousand dollars a piece, which said last

sums of money make the said capital of twenty thousand dollars. And your orators further charge, that the said John R. Matthews, Paul Rossignol and Lewis F. E. Dugas, paid no money into the coffers of the association then or at any time thereafter, for the stock thus owned and held by them; and before the grant of the charter of incorporation proceeded to sell a portion of said capital stock of twenty thousand dollars to the other defendants, in the following proportion, or in other number of shares of nearly the same import, each share at one hundred dollars, viz: to Mrs. Pauline V. Dugas five shares, Julia Augusta Nimimo one share, John B. Guieu three shares, Richard W. Habersham, Senr., five shares, Eugene D. Cook five shares, John S. Dobbins, Samuel A. Wales and James Brannon, composing the firm of John S. Dobbins, & Co., ten shares; Lewis Alexander Dugas five shares, John Edgar five shares, Leon P. Dugas five shares, Joshua M. Balleu three shares, John Frazer five shares, John W. Wilde five shares, Oliver S. Dobson five shares, Turner H. Trippe five shares, Antoine Picquet five shares, John V. C. Conling five shares, William M. D'Antignac five shares; making in the whole eighty-five shares, sold at one hundred dollars per share, and amounting to the sum of eight thousand, five hundred dollars; and that the said John R., Paul, and Lewis F. E., retained the balance of said stock, amounting to one hundred and fifteen shares, or other large number of shares, making eleven thousand, five hundred dollars, or other large sum of money, and that they have not at any time paid for said stock to said company; and that if any of the other defendants have paid for the stock sold to them as aforesaid, the money paid for the same, was all appropriated by the said John R., Paul, and Lewis F. E., and was never a part of the funds of the company.

" And your orators further charge, that shortly after the formation of the association, as aforesaid, the said defendants applied to the Legislature for an act of incorporation, which was granted them, and that if the division and sale of stock did not take place as already charged in this amendment, before the grant of the charter, the same transpired shortly thereafter, substantially as charged above.

" And your orators further charge, that said company never received, had, owned or possessed any cash capital derived from the sale of stock as aforesaid, as your orators believe, but that the pretended capital of twenty thousand dollars was all fictitious and nominal, except the sum of eight thousand dollars, given for the original iron-works property, as set forth in exhibit A and B of the original bill.

" And your orators further charge, that in the month of December, eighteen hundred and thirty-eight, or about that time, the president and directors of said company made a dividend of two thousand two hundred dollars, or other large sum, which was paid to the defendants in the proportion of shares held by each, as aforesaid; and that, at the time of declaring and paying said dividend, as aforesaid, the said company was indebted for the capital to the stockholders, and to individual creditors, to the amount of thirty-four thousand dollars, or some other large sum of money, and that no such profits had been made by the company, and that had the property and assets of the company been sold, they would not have produced funds sufficient to pay the then debts of the company; and that the said company from its formation,

Berry et al. *vs.* Matthews et al.

and during its entire existence, was totally insolvent, except that if the said sum of twenty thousand dollars was paid in, they might have been solvent for a few days, and until the said sum of eleven or twelve thousand dollars was paid therefrom, as charged to Matthews, Rossignol, and Dugas."

The defendants' solicitors filed the following exceptions to the foregoing amendment:

1st. Because it was not made in the time prescribed.

2d. Because not made as required by the order authorizing it.

3d. Because the amendment does not charge the *facts* necessary to a decree under the judgment on demurrer.

4th. Because the amendment charges the whole features of the proceeding in every important aspect, altering even the character of the parties, and seeking a decree against *all* as corporators, and against *some* of the defendants as individuals.

At April term, 1845, these exceptions were all overruled, except as to the liability of the defendants on the *facts* stated in the amended bill, in relation to the creation and sale of stock, and alleged not to have been paid for. This point was retained for further consideration. Judge Hillyer was succeeded by Judge Dougherty, who, at the April term, 1846, made the following decision upon the point reserved by his predecessor: It cannot in my opinion be insisted on with propriety, that this amendment is within the order of the chancellor; if, for no other reason, because the chancellor had in a former part of his judgment on the demurrer, decided this very point against the complainants. It cannot be presumed that the court consented to an amendment which it had just before, in the same opinion, pronounced bad. I am not entirely satisfied with the amendment, as to the question made in the bill, touching the dividends, which are charged to have been made after the insolvency of the company. Yet I will retain the bill for further hearing on that ground. It is therefore ordered, that complainants' bill be dismissed, except that part which charges, that dividends were declared, and received by the defendants as stockholders, and seeks to make the defendants liable for the same. The bill is retained for a hearing on that ground.

To this opinion, the complainants' counsel excepted, and allege:

1st. That the chancellor erred in dismissing so much of the complainants' bill, as seeks to make the defendants liable for stock created and sold, or distributed to members of said corporation, and which has not been paid for by said company.

2d. That the chancellor erred in holding up for future argument and decision, the liability of the stockholders in said company, upon the charge in said bill, that large sums of money and property had been distributed to stockholders, as dividends of profits, at a time when no such profits had been realized by said company: because, this was not an open question, the same having been previously decided in plaintiffs' favor, upon the demurrer, and upon the exceptions to the amended bill.

I have thus extracted from a most voluminous record, the sum and substance of the questions submitted for our adjudication, together

with the prefatory matter properly applicable to them, and to my mind, they are free from difficulty. The previous judge who presided in the cause, decided upon the demurrer, that the bill was defective as it then stood, but that he would sustain it upon the third ground, as to the sale of stock : *provided it had charged, that in pursuance of the charter, the company had disposed of such an amount* of stock, &c.

Does the amendment contain any such allegation ? We think not. It states that the stock of said company was two hundred shares, at one hundred dollars each ; making a capital of twenty thousand dollars. That the same originally belonged to John R. Matthews, Paul Rossignol, and Lewis F. E. Dugas, and that shortly before, or immediately after, the act of incorporation, *these three individuals* sold eighty-five shares of said stock to the other defendants, who were associated with them in the charter. A sale by these *private stockholders* was evidently not a sale by the *company*, and the liability of the purchasers of stock could not inure to the benefit of the creditors of the corporation.

The truth of this transaction is this, as it appears from the transcript of the record : Jacob Stroup, the former proprietor, conveyed to Matthews, Rossignol, and Dugas, the land on which were located the iron-works, with all the appurtenances appertaining thereto, for the sum of eight thousand dollars. This property constituted the *stock* of the concern, which they valued at twenty thousand dollars. And they induced their colleagues to buy of them eight thousand five hundred dollars worth, at those ruinous rates. And upon this basis, the charter of 1837 was granted, authorizing an extension of the capital to $600,000. But no other sale of stock was ever made. And the real estate bought of Stroup, with its fixtures and appendages, has been all sold under execution, to satisfy the debts of the company. This is a succinct, and faithful history of this visionary scheme.

It would seem that some of the stockholders or agents of this company, had induced the public to believe that they had a capital of twenty thousand dollars *actually paid in ;* and by these false representations, succeeded in obtaining a fictitious credit. But this, of course, would subject the persons implicated, to an action at the instance of the parties aggrieved, and could not involve the corporation, or the whole of the stockholders in liability. And this distinguishes this from the recent new theatre case, decided in South Carolina. There, a number of persons in Charleston, associated themselves together, by written articles, to erect a theatre, each promising to pay the amount respectively subscribed for that purpose. They contracted large debts, and afterwards applied to the Legislature for a charter, representing that they possessed a present capital of $60,000 ; and that fact was recited in the act of incorporation. The company failed. It turned out that only $37,000 had been paid in ; and the court very properly held, that in a proceeding instituted by the creditors, the stockholders should be decreed to contribute ratably to make up the sum of $60,000, to pay the outstanding debts, contracted upon the faith of the foregoing false and fraudulent representation. But this is not the case made either by the original or the amended bill.

The judgment, therefore, of the court below upon this ground in the assignment of errors, must be affirmed.

Nor can we perceive that the Circuit Court erred in holding up the other point, as to the payment of dividends, for further hearing. It is solemnly averred by the counsel of defendants in error, that the meaning of the judge was, *for future trial before the jury*; and that he was so understood at the time by the opposite party. Be that as it may, and not doubting that this was no longer an open question, having been passed upon by Judge Hillyer, in his judgment on the demurrer and exceptions 'to the amendment, still, a becoming delicacy toward the learned functionary, who, for sufficient reasons, saw fit to suspend for the present his decision upon this point, would restrain this court from interfering. He may, and we are bound to suppose will, determine that it is *res adjudicata*; and he may well insist on the benefit of the maxim, *spectemur agendo* : let us be examined by *our conduct*; tried by *our actions*; and not by what we do not do.

Judgment affirmed.